

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | § |
| | § |
| vs. | § CRIMINAL ACTION NO.: 5:19-712-MGL-8 |
| | § |
| LASHA KIMOLYN FORD, | § |
| Defendant. | § |

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S MOTION TO REDUCE SENTENCE**

**I.     INTRODUCTION**

Pending before the Court is Defendant Lasha Kimolyn Ford's (Ford) pro se motion to reduce her sentence due to the COVID-19 pandemic and the family situation involving her children. Having carefully considered the motion, the response, the supplemental briefing, the record, and the applicable law, it is the judgment of the Court Ford's motion to reduce her sentence will be denied.

**II.    FACTUAL AND PROCEDURAL HISTORY**

Ford pled guilty to one count of a prohibited person in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(9), 942(a)(2), and 942(e) and one count of possession with intent to distribute at least 100 grams of heroin and a quantity of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 841(b)(1)(c). The Court sentenced her to a term of sixty months

of imprisonment and a three-year term of supervised release. She has now completed about twenty-three months of that sentence.

When Ford filed the motion, she was housed at Federal Prison Camp Alderson (FPC Alderson). After the initial briefing concluded, the Bureau of Prisons (BOP) transferred her to Federal Correctional Institution Danbury (FCI Danbury). *Find an Inmate*, BOP, https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last visited Nov. 14, 2022) (provided by the government). She has a projected release date of October 3, 2024. *Id.*

At FCI Danbury, 202 staff members and 976 inmates have been vaccinated, and the BOP continues to provide access to vaccines as needed, including eligibility for COVID-19 booster shots. *COVID-19 Coronavirus*, BOP, https://www.bop.gov/coronavirus (last visited Nov. 14, 2022) (provided by the government). There are currently no active inmate COVID-19 cases at this facility, and it is classified as a Level 1 facility, meaning it has "[m]inimal" COVID-19 modifications. *Id.*

Ford avouches she has a history of asthma and smoking and has a BMI of fifty, which indicates severe obesity. She has received two doses of the Moderna vaccine, and contracted COVID-19 in January 2022. Since the filing of this motion, she has also received a booster dose of the vaccine.

Additionally, she claims that after one of her children's father's death in June 2021, and her mother's death in December 2020, her six children have been separated to different homes. Her youngest daughter now lives with Ford's father, Lorenzo Ford (Lorenzo) and Ford's grandmother, Vera Ford (Vera), also provides for her care.

Ford states Lorenzo suffers from heart problems and Vera is seventy-seven years old with sight issues and other health conditions. Four of her children live with their father, Patrick Sr.,

who had previously been only a small part of their lives.  Because of childcare obligations, Ford states Patrick Sr. has lost his job.  It is unclear where her last child currently lives.

The Clerk's Office entered Ford's motion on March 15, 2022.  The government responded to Ford's motion.  The Court requested supplemental briefing, which both parties filed.  The Court, having been fully briefed on the relevant issues, will now adjudicate the motion.

### III.     STANDARD OF REVIEW

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A)(i), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021).  First, the court determines whether "extraordinary and compelling reasons" exist to support a sentence reduction.  *Id.* at 185 (quoting § 3582(c)(1)(A)(i)).

Second, the court considers whether "a [sentence] reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  But, because there is "as of now no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A), . . . district courts are empowered to consider *any* extraordinary and compelling reason for release that a defendant might raise." *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) (internal alterations and citations omitted).

Finally, even if the court finds extraordinary and compelling reasons to support relief, it retains the discretion to deny a defendant's motion after balancing the applicable 18 U.S.C. § 3553(a) factors. *High*, 997 F.3d at 186.

IV.     **DISCUSSION AND ANALYSIS**

As an initial matter, Ford has exhausted her administrative remedies. The Court thus turns to the merits of her motion.

Ford posits the COVID-19 pandemic, as well as the welfare of her children, constitute extraordinary and compelling reasons for her release. The government, however, points to the BOP's COVID-19 response and argues Ford has failed to show circumstances unique to her. In other words, it claims, the nature of incarceration means the hardships Ford faces apply to most, if not all, who are incarcerated.

As the government avouches, the BOP has administered over 300,000 doses of the vaccine nationwide. And, the Court already noted Ford herself has received two doses of the Moderna vaccine, as well as one booster. The Court acknowledges the prevalence of vaccinations against COVID-19 greatly reduces the chances of success on a compassionate release motion based on the dangers presented by COVID-19. But, the Fourth Circuit has yet to rule on whether it categorically bars such relief.

The Court determines that vaccination status, including whether a defendant has received a booster, is a factor for it to consider in determining whether extraordinary and compelling reasons exist, although it fails to create such extraordinary and compelling reasons by itself. In this case, because Ford has received a booster, the Court determines this factor weighs against release. The Court notes, however, that Ford has yet to receive the new bivalent booster. There appears to be some delay in accessibility of booster shots.

Ford next insists her own medical conditions put her at a higher risk of serious illness or death if she contracts COVID-19 a second time. She states she has a BMI of fifty. The measurements contained in her medical records, however, appear to indicate a BMI of 41.49.

4

*Healthy Living Widgets*, Centers for Disease Control and Prevention (CDC), https://www.cdc.gov/widgets/healthyliving/index.html#bmicalculator (last accessed September 15, 2022). The Court takes judicial notice of this formula for the calculation of BMI.

In either case, this classifies Ford as severely obese. *People with Certain Medical Conditions*, Centers for Disease Control and Prevention (CDC), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medicalconditions.html (last accessed September 15, 2022) (provided by the government). According to the information cited by the government, "[t]he risk of severe illness from COVID-19 increases sharply with higher BMI." *Id*.

Further, Ford claims she has a history of smoking and asthma. The information from the CDC, cited by the government, also notes "[b]eing a current or former cigarette smoker" or having moderate to severe asthma "can make you more likely to get very sick from COVID-19." *Id*.

Ford fails to provide details regarding whether she still suffers from asthma and whether it is moderate or severe. Even discounting her alleged asthma, however, her other conditions still create an increased risk of severe illness should she become reinfected with COVID-19. *See High*, 997 F.3d at 185 ("The underlying arguments for release from prison based on the coronavirus pandemic depend at least on allegations that the risk of contracting COVID-19 in a prison is higher than the risk outside the prison and that the inmate's preexisting medical condition increases that individual's risk of experiencing a serious, or even fatal, case of COVID-19."). Given Ford's vaccination status, however, the Court determines her health conditions fail to rise to the level of extraordinary and compelling circumstances.

Next, Ford maintains her personal risk factors are exacerbated by the conditions at her facility, specifically the inability to social distance and the unavailability of testing. Although she

5

originally referred to the conditions at FPC Alderson, she complains the situation is much the same at FCI Danbury. The government insists the BOP has taken adequate steps to mitigate the risk, and any remaining risk fails to present extraordinary circumstances, because it applies to all those incarcerated.

The Court recognizes that the close quarters of prisons disallow social distancing. Thus, there is risk of the spread of COVID-19 in BOP facilities. Yet, by itself, this fails to create extraordinary and compelling circumstances because these dangers apply to all those incarcerated. And, the Court was aware of those dangers when sentencing Ford in May 2021, when the pandemic was already well-underway.

Similarly, Ford also argued the lack of programming at her facility due to COVID-19, which prevents her from attaining certain goals of sentencing such as vocational training, creates extraordinary and compelling reasons. The Court considers this reality an important, troubling issue, as it undermines the rehabilitative goals of sentencing. For the reasons discussed in the previous paragraph, however, it fails to create extraordinary and compelling circumstances on its own. Additionally, this situation appears to be improving, and Ford has started to take advantage of available courses.

Finally, Ford presents her family circumstances as a reason for a reduction in sentence. Unfortunately, childcare is often a hardship for families with incarcerated parents. Although Ford's family circumstances have changed since her sentencing, causing instability and hardship for her children, this also fails to rise to the level of extraordinary and compelling reasons for her release.

Inherent in a sentence of incarceration is family disruption and restricted movement within a prison facility. Each of these circumstances is a foreseeable and regrettably common result of

incarceration. Even taking together all of Ford's arguments, therefore, she has failed to set forth extraordinary and compelling reasons for her release.

## V.     CONCLUSION

Wherefore, based on the foregoing discussion and analysis, it is the judgment of the Court Ford's motion to reduce her sentence, ECF No. 539, is **DENIED**.

**IT IS SO ORDERED.**

Signed this 15th day of November 2022, in Columbia, South Carolina.

>                                    s/ Mary Geiger Lewis
>                                    MARY GEIGER LEWIS
>                                    UNITED STATES DISTRICT JUDGE